KENDRA M. MATTHEWS, OSB No. 965672
kendra@boisematthews.com
Boise Matthews LLP
1050 S.W. Sixth Ave., Suite 1414
Portland, OR 97204
Phone: (503) 228-0487

Out-of-state counsel:
COLIN J. CALLAHAN*, PA Bar No. 328033
ccallahan@flannerygeorgalis.com
JUSTIN C. WITHROW*, OH Bar No. 0088424
jwithrow@flannerygeorgalis.com
Flannery Georgalis LLC
The Gulf Tower
707 Grant St., Suite 1745
Pittsburgh, PA 15219-1945
Phone: (412) 254-8602 (Colin)
Phone: (216) 302-7573 (Justin)

FRANK R. RECKER*, OH Bar No. 0015013
recker@ddslaw.com
Frank R. Recker & Associates Co., LPA
810 Matson Place, Suite 1608
Cincinnati, OH 45204
Phone: (800) 224-2529

*pro hac vice admission applications pending

Attorneys for Plaintiffs

//

//

//

//

//

//

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **AMERICAN ACADEMY OF IMPLANT DENTISTRY,**<br>211 East Chicago Ave., Suite 1100<br>Chicago, IL 50511 | Case No. _____ |
| **JAMES MILLER, D.M.D.,**<br>518 S.E. Oak, Suite 100<br>Hillsboro, OR 97123 | **COMPLAINT FOR PRELIMINARY INJUNCTION, DECLARATORY JUDGMENT, AND DAMAGES** |
| and | **DEMAND FOR JURY TRIAL** |
| **NATHAN DOYEL, D.M.D.,**<br>17680 S.W. Handley, Suite 101<br>Sherwood, OR 97140 | |
| Plaintiffs, | |
| v. | |

**In their official capacities:**

**STEPHEN PRISBY,**
Executive Director
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

**YADIRA MARTINEZ, R.D.H.,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

//

//

**ALICIA RIEDMAN, R.D.H.,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

**AMY B. FINE, D.M.D.,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

**GARY UNDERHILL, D.M.D.,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

**REZA J. SHARIFI, D.M.D.,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

**CHARLES "CHIP" DUNN,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

**JOSE JAVIER, D.D.S.,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

**AARATI KALLURI, D.D.S.,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

//

//

**SHEENA KANSAL, D.D.S.,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

and

**JENNIFER BRIXEY,**
Member
Oregon Board of Dentistry
1500 S.W. 1st Ave., Suite 770
Portland, OR 97201

Defendants.

Through counsel, Plaintiffs—the American Academy of Implant Dentistry ("AAID") and dentists Dr. James Miller and Dr. Nathan Doyel—allege as follows for their complaint against the Defendants, the executive director, and the individual members of the Oregon Board of Dentistry (the "Oregon Board"), in their official capacities:

## PRELIMINARY STATEMENT

1.    AAID is a national dental organization. Dentists, upon satisfying certain experiential, educational, and testing requirements, may earn credentials issued by AAID and its certifying board, the American Board of Oral Implantology/Implant Dentistry ("Implant-Dentistry Board"), in the field of implant dentistry. The highest certification a dentist can earn through the Implant-Dentistry Board is "Diplomate." The Diplomate credential issued by the Implant-Dentistry Board is the most rigorous, objectively verifiable credential that a dentist can earn in the field of implant dentistry.

2.    Drs. Miller and Doyel are each Oregon dentists and Implant-Dentistry Board Diplomates. In other words, they are each board-certified in implantology. This objectively verifiable

credential provides consumers with important information concerning their confirmed competence in the field of implant dentistry.

3.     Because they are board-certified in implantology, Drs. Miller and Doyel—and other similarly situated board-certified members of AAID in Oregon—seek to hold themselves out as specialists in implant dentistry, also known as implantology. Advertising a specialty in this sub-field of dentistry under these circumstances is truthful, is not misleading, and conveys more precise information to the public and promotes their practice. A specialty statement would be truthful and non-misleading, and it therefore constitutes commercial speech protected by the First Amendment to the United States Constitution and Article I, section 8, of the Oregon Constitution.

4.     Unfortunately, Oregon law and regulations as adopted and applied by the Defendants unconstitutionally bar the Plaintiffs from conveying this truthful information.

5.     The Defendants wrongfully limit the practice areas in which a dentist can advertise a specialty to practice areas recognized as specialties by the Oregon Board.

6.     The State of Oregon has a substantial interest in prohibiting false and misleading advertising. But the Defendants' purported prohibition on truthfully advertising specialization in implantology when a dentist has achieved board certification by a bona fide dental organization like AAID and the Implant-Dentistry Board does not directly and materially advance the State's substantial interest. Indeed, it does not advance it at all, but instead denies the public important and accurate information. Moreover, the State of Oregon's regulatory structure, as enacted and applied by Defendants, is not narrowly tailored as required by a litany of cases on this issue.

7.     The Oregon regulatory regime is a discriminatory and irrational classification system that arbitrarily distinguishes between licensed dentists who can hold themselves out to be specialists or board-certified, and those like Drs. Miller and Doyel, and other Implant-Dentistry-

Board-certified dentists, who cannot so advertise. Defendants confer rights on dentists who have obtained designations as recognized specialists, while impinging on the fundamental rights of dentists who have obtained professional dental credentials in an area of dentistry not recognized by the State as a specialty. This irrational, unequal treatment is prohibited by the United States and Oregon constitutions.

8.      Defendants have also denied Drs. Miller and Doyel, and other AAID member-dentists in Oregon a mechanism for evaluating or acknowledging the professional dental credentials earned by them in areas of dentistry not recognized by the State of Oregon or the American Dental Association ("ADA") as specialties. The regulatory scheme likewise deprives AAID itself of any mechanism for appealing the Board's denial of recognition of any credentialing organization or any areas of dental practice not recognized as specialty areas of practice by the State of Oregon.

9.      The at-issue portions of Oregon law and regulations, both on their face and as applied by Defendants, violate the Free Speech Clause of the First Amendment to the United States Constitution and Article I, section 8, of the Oregon Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and likewise violate the procedural and substantive due-process rights guaranteed to Drs. Miller and Doyel by the Fourteenth Amendment.

10.     Along similar lines, Oregon law and regulations, as enacted and applied by Defendants, violate the rights of AAID individually as well as the rights of the numerous Oregon-based member-dentists that it represents.

11.     For these reasons, as explained more fully below, Plaintiffs AAID and Drs. Miller and Doyel seek a declaratory judgment from this Court finding that the at-issue Oregon laws and

regulations are unconstitutional both facially and as-applied. Plaintiffs likewise seek injunctive relief to safeguard them from further injury by Defendants.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). Plaintiffs seek declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. §§ 1983 and 1988. This matter arises under the First and Fourteenth Amendments to the United States Constitution and is asserted via 42 U.S.C. § 1983.

13.    This Court has jurisdiction over Plaintiffs' state-law claim under the doctrine of pendent jurisdiction.

14.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 117 and 1391(b). Defendants' official place of business is in Portland, Multnomah County, Oregon, which lies within this District. Upon information and belief, all Defendants are residents of the State of Oregon and work in this District. Additionally, a substantial part of the events or omissions giving rise to these claims occurred in this District.

## BACKGROUND AND INTRODUCTION TO THE PLAINTIFFS

15.    Implantology, or implant dentistry, is a field of dentistry that involves the surgical placement of artificial posts in the jawbone, which anchor replacement teeth or bridges. Implants offer certain advantages over other alternatives (like dentures), but not all patients are candidates for implants, and implant surgery can lead to serious complications. Implant dentistry is a multi-disciplinary field, which includes dental surgery, prosthetics, periodontics, occlusion, pain management, anatomy, physiology, pathology, and dental-facial aesthetics.

16.    Plaintiff AAID is a national dental organization whose primary mission is educating dentists in the field of implant dentistry and enhancing its members' knowledge, skills, and expertise in the field.

17.    The Implant-Dentistry Board is AAID's certifying board. It is accredited as a certifying board by the American Board of Dental Specialties ("ABDS"). ABDS is an independent specialty-certifying entity not controlled by the ADA or by any other professional dental organization representing any specific area of dentistry.

18.    AAID's member-dentists, upon satisfying certain experiential, educational, and testing requirements, may earn credentials issued by AAID and the Implant-Dentistry Board in the field of implant dentistry.

19.    Specifically, members of AAID may earn various credentials in the field of implant dentistry: the "Associate Fellow—AAID," "Fellow—AAID," and "Diplomate— Implant-Dentistry Board" designations. The requirements that any dentist must meet before earning any of these designations are both objective and verifiable.

20.    To become an "Associate Fellow–AAID," a dentist must: (a) complete 300 hours of continuing education in implant dentistry, including 150 hours of clinical implant education; (b) pass a written examination; and (c) successfully complete an oral/clinical treatment case examination.

21.    To become a "Fellow–AAID," a dentist must: (a) have five years of experience in implant dentistry; (b) complete an additional 100 hours of continuing education in implant dentistry (beyond the 300 hours required for the associate fellow credentials); (c) provide dental implant treatment in at least fifty cases; (d) pass an oral examination; and (e) satisfactorily present ten cases to the AAID's admissions and credential board.

22.     Nationally, the AAID currently has approximately 3,947 members. Of those 3,947 members, approximately 1,045 have earned Associate Fellow or Fellow status.

23.     The Implant-Dentistry Board, for its part, issues the "Diplomate" (aka "Board Certified") credential. The Diplomate credential is the highest certification a dentist can earn through the Implant-Dentistry Board, and it is the most rigorous, objectively verifiable credential that a dentist can earn in the field of implant dentistry.

24.     Dentists may earn this credential by passing the Implant-Dentistry Board's certification examination and by fulfilling certain rigorous educational, experiential, and examination requirements. To be eligible to become a Diplomate, a dentist first must (a) be a graduate of a full-time, two-year post-doctoral program in oral implantology, (b) be a board-certified graduate of a full-time advanced education program, and (c) complete a full-time advanced education program and pass a written exam. All applicants must also have seven or more years of experience in the practice of implant dentistry and have completed at least 75 implant cases. Once a practitioner meets these initial qualifications, the practitioner must then take and pass a comprehensive oral examination covering both standardized implant cases developed by the Implant-Dentistry Board as well as four of eight cases the candidate submits to the Implant-Dentistry Board as part of the application process in specific areas of implant dentistry.

25.     Since the Implant-Dentistry Board began issuing these credentials in 1989, approximately 633 dentists have successfully completed the requirements and received this designation.

26.     AAID has promoted the field of implant dentistry through education, training, and research for over 70 years. AAID and the Implant-Dentistry Board have both issued credentials to dentists for over 30 years. Under Oregon law, as enacted and applied by Defendants, these dentists are unable to advertise as specialists or board-certified in implantology. Moreover, Defendants

defer exclusively to the specialty-recognition process of the ADA, whether through the ADA's Commission on the Recognition of Dental Specialties and Certifying Boards (the "ADA Recognition Commission") or through the United States Department of Education ("DOE"), which itself relies on the ADA. That is, while Oregon does not yet recognize every specialty recognized by the ADA, Defendants only recognize as specialties—and therefore permit factually accurate advertising concerning—specialty areas that are recognized by the ADA. Notably, the ADA is a private organization comprised of dentist–members who are, in many instances, in competition with Plaintiffs, and who therefore have a direct financial stake in restricting who may represent themselves as a "specialist" or as board-certified in implantology to the consuming public.

27.     Education specific to implant dentistry is not required in dental-school curriculum as promulgated by the ADA's Commission on Dental Accreditation ("CODA").

28.     Plaintiff AAID brings this action as the associational representative of its Oregon members who wish to advertise as specialists in implant dentistry and as board-certified in implantology.

29.     Dentists are less likely to seek membership in AAID and certification by the Implant-Dentistry Board if they cannot truthfully advertise a specialization in implant dentistry once they achieve that certification.

30.     Plaintiff James Miller ("Dr. Miller") is an Oregon dentist. He resides in Hillsboro, Oregon. Dr. Miller has been licensed to practice dentistry in Oregon since 1979. He practices dentistry in Washington County, Oregon. Dr. Miller has been providing implants as a dental service since 1987. He has been a member of AAID since 2007 and a credentialed AAID Fellow

since 2015. He also received recognition in 2014 as a Diplomate of the Implant-Dentistry Board. His practice is almost exclusively centered on comprehensive reconstructive implant dentistry.

31.     Plaintiff Nathan Doyel ("Dr. Doyel") is an Oregon dentist. He resides in Sherwood, Oregon. Dr. Doyel has been licensed to practice dentistry in Oregon since 1997. He practices dentistry in Sherwood, Oregon. Dr. Doyel has been providing implants as a dental service since 1997. He has been a member of AAID since 2013 and a credentialed AAID Fellow since 2020. He also received recognition in 2019 as a Diplomate of the Implant-Dentistry Board. A large percentage of his practice is comprised of implant dentistry.

32.     Drs. Miller and Doyel are Implant-Dentistry Board Diplomates—board-certified in implantology. This objectively verifiable credential provides consumers with important information concerning Drs. Miller and Doyel's confirmed competence in the field of implant dentistry.

33.     Drs. Miller and Doyel wish to be recognized as specialists and to advertise as specialists in implant dentistry. They wish to use terms like "specialist" and "specialize" in their advertisements and communications with the public, as well as related descriptions that may imply specialization like "board-certified in implantology by the American Academy of Implant Dentistry." They bring this action to protect their constitutional rights, to increase the provision of truthful, non-misleading information to consumers about their own specialization in the area of implant dentistry, and to improve the financial well-being of their dental practices. They and similarly situated AAID member–dentists face an imminent risk of irreparable injury unless the Court declares Oregon's specialty-regulation scheme unconstitutional and grants Plaintiffs the injunctive relief sought.

34.     Under Oregon law, as interpreted and applied by Defendants, Drs. Miller and Doyel, and other credentialed AAID members who are engaged in the practice of dentistry in

Oregon are unable to achieve recognition of their status as specialists in implant dentistry because Defendants have chosen not to recognize implant dentistry as a specialty area.

35.    Defendants defer exclusively to the ADA, directly or indirectly, as to which practice areas will be recognized as specialty areas and which areas are denied specialty recognition. Defendants only recognize a specialty area—and therefore permit factually accurate advertising concerning that area— if that area is recognized by the ADA Recognition Commission. Oregon allows the Defendants to recognize a dentist as a specialist if the dentist has met certain standards established by the ADA Commission on Dental Accreditation or the ADA Recognition Commission. Oregon also allows the Defendants to recognize a dentist as a specialist if the dentist "has completed an advanced dental education program that is at least two years in length and is recognized by the United States Department of Education," but the DOE—in turn—relies on these same two ADA commissions to decide which programs to recognize.

36.    In practice, the Defendants have relied exclusively on the ADA to decide which practice areas to recognize as specialties.

37.    For example, the ADA for the first time chose to recognize Oral Medicine and Orofacial Pain as specialty areas in September 2020. Those two areas were not yet recognized by the Oregon Board, but immediately and predictably, in October 2020, the Oregon Board unanimously passed a proposed rule amendment to recognize those areas of specialty in Oregon.

38.    The ADA is a private organization comprised, in large measure, of dentist–members who are in competition with Plaintiffs, and who therefore have a direct financial stake in restricting who may represent themselves as a "specialist" or as board-certified in implantology to the consuming public.

39.    Defendants' deferral to the ADA gives Plaintiffs' competitors a *de facto* veto over Plaintiffs' ability to be recognized as specialists and deprives Plaintiffs of their rights without due process.

40.    In this matter, AAID sues on its own behalf and also in a representative capacity on behalf of its dentist–members who are engaged in the practice of dentistry in Oregon and who have been certified in implant dentistry by the AAID and the Implant-Dentistry Board, and who are thus adversely affected by O.A.R. 818-015-000, Or. Rev. Stat. ("ORS") 679.546(1), and O.A.R. 818-021-0015 (the "Regulatory Scheme").

### The Defendants

41.    The Oregon Board of Dentistry is the state professional board charged with regulating the practice of dentistry and dental hygiene in ORS Chapters 679, 680.010–680.205.

42.    Among other things, the Board is empowered to license dentists, make, and enforce rules to regulate the practice of dentistry, and investigate and discipline licensees. ORS 679.250. In adopting rules, the Board is required to "take into account all relevant factors germane to an orderly and fair administration of this chapter . . . , the practices and materials generally and currently used and accepted by persons licensed to practice dentistry in this state, dental techniques commonly in use, relevant technical reports published in recognized dental journals, the curriculum at accredited dental schools, the desirability of reasonable experimentation in the furtherance of the dental arts, and the desirability of providing the highest standard of dental care to the public consistent with the lowest economic cost." ORS 679.250(7).

43.    Defendant Stephen Prisby is the Executive Director of the Oregon Board of Dentistry (the "Board"). Defendant Prisby is sued only in his official capacity.

44.     Oregon law requires that the Board be composed of ten members appointed by the Governor and subject to confirmation by the Senate, six of whom must be licensed dentists. ORS 679.230(1), ORS 679.230(1)(a). One of these dentist-members "must be a dentist practicing in a dental specialty recognized by the American Dental Association." *Id.* § 679.230(1)(a). Under ORS 679.230, Board members are appointed and confirmed to four-year terms, though they can be removed by the Governor of Oregon prior to the expiration of their terms.

45.     Defendants Yadira Martinez, Alicia Riedman, Amy B. Fine, Gary Underhill, Reza J. Sharifi, Charles "Chip" Dunn, Hai Pham, José Javier, and Jennifer Brixey are the current members of the Oregon Board of Dentistry.

46.     The individual members of the Board are sued only in their official capacities.

47.     Collectively, the Defendants are responsible for implementing, administering, and enforcing the Oregon Dental Practice Act, ORS 679. This authority includes the power to discipline licensed dentists in Oregon, ORS 679.140, 679.250(8), including the power to discipline such dentists for "unprofessional conduct," ORS 679.140(1)(c). Under the Oregon Dental Practice Act, "unprofessional conduct" includes using statements in advertising "tending" to deceive or mislead the public or that are untruthful. ORS 679.140(2)(d). The members of the Oregon Board also are authorized to adopt regulations consistent with the Oregon Dental Practice Act, ORS 679.250(7), specifically including such rules as are necessary to carry out ORS 679.546, which is the statute that allows licensed Oregon dentists to advertise as specialists in "one or more areas of dentistry" if certain conditions are met. It is ostensibly under this authority that the Oregon Board has promulgated, and the Oregon Board and its Executive Director enforce, the specialty advertising rule, O.A.R. 818-015-0007.

48.     All of the Defendants may be served with process at the official office of the Oregon Board of Dentistry, which is located at 1500 S.W. 1st Avenue, Suite 770, Portland, Oregon 97201.

## THE REGULATORY SCHEME

49.     Oregon law permits all licensed dentists to practice in any and all areas of dentistry (including the placement of dental implants) regardless of whether those areas are recognized by the ADA as specialties and regardless of the individual dentist's actual education, experience, or expertise in performing dental services in those areas. All Oregon dentists may therefore place dental implants, whether or not they have had any formal training, education, or experience in placing implants.

50.     Oregon law also allows any Oregon dentist to advertise that the dentist performs services in any area of dentistry. If a dentist is not recognized by the Regulatory Scheme as a specialist in a given subfield of dentistry yet advertises that he performs services in, or limits his practice to, a recognized specialty area, he must disclaim that he is a specialist in that subfield by disclosing in the advertisement that he is a general dentist or a specialist in a different specialty. O.A.R. 818-015-007(3).

51.     As implant dentistry is not a recognized specialty area, any Oregon-licensed dentist—regardless of their actual education, experience, or expertise in performing dental-implant services—can perform those services on patients and can advertise that they do so.

52.     But Oregon law does regulate who may be classified as a specialist in a subfield of dentistry.

53.     Oregon law, specifically ORS 679.546, only allows a dentist to advertise as a specialist in a given subfield of dentistry if the dentist:

(a)    has completed a post-doctoral residency program that is at least two years in length and is accredited by the ADA's Commission on Dental Accreditation, or its successor organization, and approved by the board by rule;

(b)    is a specialist as defined by the ADA Recognition Commission, or its successor organization, and adopted by the board by rule; or

(c)    has completed an advanced dental education program that is at least two years in length and is recognized by the United States Department of Education, and approved by the board by rule.

54.    The Board has promulgated rules, including O.A.R. 818-015-0007, to implement the statute.

55.    Oregon regulations, specifically O.A.R. 818-015-0007, authorize advertising of a specialty in only ten specific subfields of dentistry. Implant dentistry is not among them. The regulation provides:

(1) A dentist may only advertise as a specialist in an area of dentistry which is recognized by the Board and in which the dentist is licensed or certified by the Board.

(2) The Board recognizes the following specialties:

(a) Endodontics;

(b) Oral and Maxillofacial Surgery;

(c) Oral and Maxillofacial Radiology;

(d) Oral and Maxillofacial Pathology;

(e) Orthodontics and Dentofacial Orthopedics;

(f) Pediatric Dentistry;

(g) Periodontics;

(h) Prosthodontics;

(i) Dental Public Health;

(j) Dental Anesthesiology.

56.     The list of dental specialties recognized by the Oregon Board exactly mirrors the list of specialties recognized by the ADA. A temporary deviation last year only proves the rule: In September 2020, the ADA chose to recognize Oral Medicine and Orofacial Pain as specialties, thus rendering the ADA and Oregon Board temporarily out of sync, given that the latter had not yet recognized these specialties. But predictably, in October 2020, the Oregon Board unanimously passed a proposed rule amendment adding these two specialty areas of practice to O.A.R. 818-015-0007 and 818-021-0012.

57.     The listed "specialties" are defined in more detail in O.A.R. 818-001-0002(12).

58.     Under O.A.R. 818-015-0005(1), "to advertise" means "to publicly communicate information about a licensee's professional services or qualifications for the purpose of soliciting business."

59.     Under ORS 679.140(1)(c)–(d) and ORS 679.250(8), the Oregon Board may punish licensed Oregon dentists, including the individual Plaintiffs in this case, for violations of the specialty advertising rule, including the suspension or revocation of their licenses and the imposition of civil monetary penalties, ORS 679.140(5).

60.     Each of the individual Plaintiffs is a member of the AAID and has earned credentials from the AAID and the Implant-Dentistry Board. The individual Plaintiffs have expended many thousands of dollars in expenses and professional time to earn these credentials and acquire expertise in their respective areas of practice. But because the ADA and the Oregon Board have

not recognized implant dentistry as a specialty area of practice, Plaintiffs are prohibited under O.A.R. 818-015-0007 from advertising their specialty. The Oregon Board's specialty advertising rule has therefore deprived them of any opportunity to recoup their investments and to be rewarded for their industry in earning these credentials and declaring themselves to be specialists in their respective areas of expertise. The restrictive rule further deprives the public of knowledge of those dental professionals who are more highly educated, trained, and tested in their respective fields in dental implants, dental anesthesia, oral medicine, and orofacial pain.

61.    Despite the objectively verifiable education, training, and experience required to obtain credentials from the AAID and the Implant-Dentistry Board, as the individual Plaintiffs have done, neither these Plaintiffs nor any AAID members in Oregon who have satisfied the same criteria can declare themselves specialists or advertise that their respective areas of expertise are specialty areas of dental practice. Both the Oregon Board and the ADA refuse to recognize implant dentistry as a specialty area of practice. Through the Defendants' enforcement of the Regulatory Scheme, these refusals by the Oregon Board and by the private ADA constitute a legal prohibition, barring many licensed Oregon dentists, including the individual Plaintiffs, from rightfully holding themselves out as specialists in their fields.

62.    The Oregon Board has effectively used the Regulatory Scheme to delegate governmental authority to the ADA to determine which areas of dental practice should receive specialty designation and, hence, which areas may be advertised by Oregon dentists as specialties. The regulations provide no mechanism for evaluating the accrediting organization or its credentials or for contesting the decisions of the ADA denying specialty recognition.

63.    The ADA is neither a neutral nor an impartial factfinder concerning dental accrediting organizations in the specialty area of dentistry represented by the Plaintiffs. On the contrary,

credentialed AAID members compete with ADA members who are either board-certified in ADA-recognized specialties or are dentists who engage in implant dentistry, but who have not earned any bona fide credentials in those fields. Advertising of credentials or specialization in the area of implant dentistry, as Plaintiffs seek to establish the right to do, presents a direct economic threat to ADA members who decide specialty areas of practice, thereby precluding an impartial determination of specialties and specialty areas of practice.

64.    The determination of whether or not an area of dentistry will be deemed a specialty area of dentistry recognized by the ADA is made by the ADA Recognition Commission. The ADA Recognition Commission states on its website that dental specialties are recognized "to protect the public, nurture the art and science of dentistry and improve the quality of care."

65.    Under the Regulatory Scheme—the State of Oregon has no active, continuing, or meaningful supervision over the ADA, to which is has effectively delegated unfettered regulatory power to determine which subfields of dentistry may be advertised as specialties and what specific credentials entitle a dentist to so-advertise. The Federal constitution does not allow the Oregon Board to delegate unguided and uncontrolled authority to a private organization to establish rules determining the lawfulness or unlawfulness of commercial speech. Yet, this is precisely what Defendants have done in promulgating the Oregon Board's specialty advertising rule and continuing to enforce it.

66.    The Regulatory Scheme has effectively granted the ADA the power to regulate the right to free speech of the individual Plaintiffs by not allowing credentialed members in the AAID to advertise as specialists even though they are highly qualified to do so. The specialty regulation has a chilling effect on Plaintiffs' lawful exercise of their right to engage in truthful, non-misleading commercial speech because, if they were to advertise to the public as specialists, their licenses

would be at risk, and they would be subject to civil monetary penalties imposed by the Oregon Board.

67.    The Regulatory Scheme imposes arbitrary conditions precedent to advertising without regard to the nature, validity, or truthfulness of the information provided to the public, all in direct violation of Plaintiffs' rights. Pursuant to the Regulatory Scheme, the Oregon Board engages in no substantive analysis, fact-finding, or rulemaking concerning how a dental organization (such as the ADA or AAID) becomes bona fide, how credentialing is obtained, and whether advertising as a specialist in the field would be deceptive or misleading to the public.

68.    The regulation also violates procedural due process. The ADA is given the authority, final and unchecked, to determine the limits of lawful dental advertising and is free from procedures consistent with due process. There is no established procedure by which an Oregon-licensed dentist may request recognition of his field as a specialty. The ADA does not have to give any Oregon dentist notice or an opportunity to be heard, despite the fact that it is, *de facto*, the sole arbiter as to what specialties can and cannot be advertised in Oregon. By outsourcing this decision-making, the Regulatory Scheme denies interested persons the pre- and post-deprivation remedies which due process commands. The challenged regulation deprives interested parties of an opportunity to be heard, and while the failure to provide pre-deprivation notice and hearing may be cured by post-deprivation remedies, the challenged regulation offers no such remedy. A refusal by the ADA to recognize specific organizations or areas of dentistry as specialty areas of practice, such as those represented by the individual Plaintiffs, is final and not reviewable. This violates the due process guarantees of the Fourteenth Amendment to the Constitution of the United States.

69.    Furthermore, the regulation also violates substantive due process, which protects fundamental rights from arbitrary and unwarranted encroachment by the government. When a

regulation encroaches on fundamental constitutional rights, it must be narrowly tailored to achieve a state's purpose. The specialty regulation in question encroaches on the fundamental rights of Plaintiffs. Their rights to be rewarded for their industry and truthful communication regarding their credentials and expertise, and to declare themselves specialists in implant dentistry, have been denied. The Regulatory Scheme does not satisfy basic constitutional standards and is not narrowly tailored. It creates false impressions regarding the eminently legitimate credentialing organizations the individual Plaintiffs belong to and imputes a State-sanctioned stamp of illegitimacy to their specializations. The specialty advertising regulation implies that the ADA has evaluated the authenticity of the organizational Plaintiff and determined that it is unfit for inclusion as a specialty board and its field of implant dentistry is unworthy of advertising as a specialty area of practice. As such, the Regulatory Scheme violates constitutional guarantees of due process.

## CAUSES OF ACTION

### COUNT I: FREEDOM OF SPEECH
### (42 U.S.C. § 1983)

70.     Paragraphs 1–69 are incorporated as if fully set forth herein.

71.     The right of AAID member-dentists—including Drs. Miller and Doyel—to advertise truthfully is protected by the First Amendment to the U.S. Constitution, which applies to the State of Oregon through the Due Process Clause of the Fourteenth Amendment.

72.     Drs. Miller and Doyel have invested a significant amount of time and money into obtaining certified credentials in implant dentistry and advertising their practice in Oregon, including by maintaining business websites.

73.     Other Oregon dentists certified by AAID and the Implant-Dentistry Board similarly have a constitutional right to advertise truthfully. Many of these dentists, too, have invested in advertising regarding their education and credentials in implant dentistry.

74.     The individual Plaintiffs wish to advertise as specialists in implant dentistry, and it would not be false or misleading to do so.

75.     Notwithstanding the fact that the individual Plaintiffs have obtained bona fide credentials in implant dentistry and do in fact specialize in the subfield of dentistry, Defendants—through their use of Oregon's specialty advertising rule, O.A.R. 818-015-0007—seek to prohibit the individual Plaintiffs and other similarly situated dentists certified by AAID and the Implant-Dentistry Board from exercising their right to truthful, non-misleading commercial speech. Specifically, the Rule bars the individual Plaintiffs and others similarly situated from advertising their specialization—and AAID- and/or Implant-Dentistry Board-conferred certification—in Oregon. This violates the First Amendment rights of both the individual Plaintiffs and Plaintiff AAID, thus rendering the rule unconstitutional both on its face and as applied.

76.     Oregon's unconstitutional regulatory structure, on its face and as applied to the Plaintiffs, also injures Oregon dental patients who may be seeking dental implants and other specialized implant procedures. These patients lack access to truthful information about legitimate accreditations that could distinguish more experienced and trained dentists like Implant-Dentistry-Board Diplomates from general dentists who lack that experience and training.

77.     Further, if Oregon continues to enforce the regulatory scheme, fewer Oregon dentists will seek membership in AAID or the education and certification of AAID and the Implant-Dentistry Board. Not only will this negatively affect dental-implant patients in Oregon, who will not benefit from the added specialized training that AAID and the Implant-Dentistry Board provide, but it will continue to financially harm AAID because its membership will continue to be artificially reduced.

78.    The Oregon's Regulatory Scheme, on its face and as applied to the Plaintiffs, violates Plaintiffs' constitutional rights. This violation is actionable under 42 U.S.C. § 1983.

### COUNT II: FREEDOM OF SPEECH
### (OREGON CONSTITUTION, ART. I § 8)

79.    Paragraphs 1–78 are incorporated as if fully set forth herein.

80.    AAID member-dentists in Oregon—including Drs. Miller and Doyel—are protected by the Oregon Constitution, including Article I, section 8, which prohibits Defendants from "restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever." Or. Const., Art. I, § 8.

81.    The Regulatory Scheme violates Plaintiffs' free-expression guarantees under Article I, section 8, of the Oregon Constitution. On its face, the Regulatory Scheme prohibits truthful speech, and the prohibition is not permitted by any historical exception. Further, the Regulatory Scheme is unconstitutionally overbroad. It prohibits speech that would not cause any of the effects the Defendants seek to avoid.

82.    Defendants' actions in promulgating and enforcing the Regulatory Scheme unreasonably discriminates against Plaintiffs based on the content of their speech, in violation of Article I, section 8, of the Oregon Constitution.

### COUNT III: EQUAL PROTECTION
### (42 U.S.C. § 1983)

83.    Paragraphs 1–82 are incorporated as if fully set forth herein.

84.    The Regulatory Scheme creates discriminatory classifications between dentists who have obtained designations as Board-recognized specialists and those who have obtained professional dental credentials in an area of dentistry not recognized by the State as a specialty.

85.     The specialty regulation creates irrational and discriminatory classifications be-
tween licensed dentists who can hold themselves out to be specialists or board-certified, and those
such as Drs. Miller and Doyel, and other Implant-Dentistry-Board-certified dentists who cannot
so advertise.

86.     The Regulatory Scheme confers rights on dentists who have obtained designations
as recognized specialists, while impinging on the fundamental rights of dentists who have obtained
professional dental credentials in an area of dentistry not recognized by the State as a specialty.
This irrational, unequal treatment is prohibited by the United States Constitution.

87.     The Regulatory Scheme is suspect and subject to heightened judicial scrutiny be-
cause it directly impinges upon fundamental rights.

88.     Both facially and as applied, the Regulatory Scheme denies equal protection of the
laws to Plaintiffs. This violation of Plaintiffs' constitutional rights by Defendants is actionable
under 42 U.S.C. § 1983.

### COUNT IV: SUBSTANTIVE AND PROCEDURAL DUE PROCESS
### (42 U.S.C. § 1983)

89.     Paragraphs 1–88 are incorporated as if fully set forth herein.

90.     Drs. Miller and Doyel—as well as AAID's other Oregon member-dentists—have
protected property and liberty interests in their licenses to practice dentistry and have a right to
engage in truthful commercial speech.

91.     The Regulatory Scheme deprives Drs. Miller and Doyel, and other Implant-Dentis-
try-Board-certified dentists of a state mechanism for evaluating or acknowledging the professional
dental credentials earned by them in areas of dentistry not recognized by the State of Oregon or
the ADA as specialties. The Regulatory Scheme likewise deprives AAID itself of any mechanism

for appealing the Board's denial of recognition of any credentialing organization or any areas of dental practice not recognized as specialty areas of practice by the State of Oregon.

92.     Both facially and as applied, the Regulatory Scheme deprives Plaintiffs of the right to a neutral and impartial factfinder, resulting in arbitrary and capricious decisions, in violation of Plaintiffs' due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution. This violation of Plaintiffs' constitutional rights is actionable under 42 U.S.C. § 1983.

### Prayer for Relief

93.     Plaintiffs ask the Court to:

a.     declare Oregon's specialty-advertising rule, O.A.R. 818-015-0007, unconstitutional on its face and as applied to Plaintiffs;

b.     declare ORS 679.546(1) and O.A.R. 818-021-0015 each unconstitutional on its face and as applied to Plaintiffs;

c.     issue a permanent injunction prohibiting Defendants, their officers, agents, employees, attorneys, successors in office, and all persons in active concert or participation with them from further maintenance, implementation, or enforcement of the provisions of Oregon's specialty-advertising rule, O.A.R. 818-015-0007;

d.     issue a permanent injunction prohibiting Defendants, their officers, agents, employees, attorneys, successors in office, and all persons in active concert or participation with them from further maintenance, implementation, or enforcement of the provisions of ORS 679.546(1) and O.A.R. 818-021-0015;

e.     issue a permanent injunction prohibiting Defendants, their officers, agents, employees, attorneys, successors in office, and all persons in active concert or participation with

them from instituting or from further maintenance of any disciplinary actions against dentists who

have achieved Implant-Dentistry Board Diplomate status for advertising as specialists;

      f.      award Plaintiffs their reasonable attorney fees, litigation expenses, and costs

incurred in bringing and prosecuting this action, pursuant to 28 U.S.C. § 1920, 42 U.S.C.

§ 1988(b), and Fed. R. Civ. P. 54(d); and

      g.      grant Plaintiffs any other relief as may be necessary, appropriate, and equi-

table.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

Respectfully submitted,

Dated: August 11, 2021.

s/ *Kendra Matthews*

KENDRA M. MATTHEWS, OSB No. 965672
kendra@boisematthews.com

BOISE MATTHEWS LLP
1050 S.W. Sixth Ave., Suite 1414
Portland, OR 97204
Phone: (503) 228-0487

— and —

Colin J. Callahan*, PA Bar No. 328033
ccallahan@flannerygeorgalis.com

Justin C. Withrow*, OH Bar No. 0088424
jwithrow@flannerygeorgalis.com

*pro hac vice admission applications pending*

**FLANNERY | GEORGALIS, LLC**
The Gulf Tower
707 Grant St., Suite 1745
Pittsburgh, PA 15219-1945
Phone/Fax: (412) 254-8602 (Colin)
Phone/Fax: (216) 302-7573 (Justin)

— and —

Frank R. Recker*, OH Bar No. 0015013
recker@ddslaw.com

*pro hac vice admission application pending*

**Frank R. Recker & Associates Co., LPA**
810 Matson Place, Suite 1608
Cincinnati, OH 45204
Phone: (800) 224-2529
Fax: (888) 469-0151

*Attorneys for Plaintiffs*